**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOHN HATZFELD,

                              Plaintiff,

        v.                                              No. 04-CV-159
                                                        (NAM/DRH)

GLENN S. GOORD, Commissioner; LESTER
WRIGHT, Chief Medical Officer; FRANK R.
HEADLY, Dep. Commissioner; JOHN W.
BURGE; Superintendent, Auburn Correctional
Facility; MARK RABIDEAU; Dep. Supt., Auburn
Correctional Facility; D. McCLENDON, RSAT
Coordinator, Auburn Correctional Facility; W.
ROBINSON, Nurse Administrator, Auburn
Correctional Facility; S. AHSAN, Medical Dir.,
Auburn Correctional Facility; and ANTHONY
GRACEFFO, Medical Dir., Auburn Correctional
Facility,

                              Defendants.

---

**APPEARANCES:**                    **OF COUNSEL:**

JOHN HATZFELD
Plaintiff Pro Se
No. 95-A-0396
Auburn Correctional Facility
135 State Street
Auburn, New York 13024

HON. ANDREW M. CUOMO              MARIA MORAN, ESQ.
Attorney General for the           Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff pro se John Hatzfeld ("Hatzfeld"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, nine DOCS employees, violated his constitutional rights under the First, Fifth,[2] Eighth, and Fourteenth[3] Amendments.  Compl. (Docket No. 1). Presently pending is defendants' motion for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Docket No. 68.  For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

The facts as alleged in the complaint are assumed to be true for the purposes of this

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] To the extent that Hatzfeld is asserting a due process claim based upon the Fifth Amendment, defendants' motion as to this cause of action should be granted because the "'Amendment governs the conduct of the federal government and federal employees, and does not regulate the activities of state officials or state actors.'" Dawkins v. City of Utica, No. Civ. 93-373, 1997 WL 176328, at *4 (N.D.N.Y. Apr. 4, 1997) (McCurn, J.) (quoting Schanzer v. Rutgers Univ., 934 F. Supp. 669, 679 n.14 (D.N.J. 1996)).  Only state employees are named as defendants in this action.

[3] In his third cause of action, Hatzfeld contends that defendants' denial of his medical care constituted a deprivation of his right to life, liberty, and property without due process of law in violation of the Fourteenth Amendment.  See Compl. at 16.  However, this claim is more properly addressed under the Eighth Amendment because that amendment "governs the way in which medical treatment is administered to prisoners . . . ."  Pabon v. Wright, 459 F.3d 241, 253 (2d Cir. 2006).  Further, "the protections of the Eighth Amendment reach decisions by prison authorities regarding the manner in which they provide medical care to inmates . . . [while] [t]he Fourteenth Amendment . . . protects the individual's liberty interest in making the decisions that affect his health and bodily integrity."  Id.

motion.  See Section II(A) infra.

In April 2000, while incarcerated at Auburn Correctional Facility ("Auburn"), Hatzfeld was notified that he tested positive for Hepatitis C.[4]  Compl. at 4.  Dr. Anthony Graceffo, the medical director at Auburn and a defendant herein, recommended that the medical staff monitor Hatzfeld's blood for six months to determine if the condition would heal naturally. Id. at 5.  In April 2001, Dr. Graceffo informed Hatzfeld that his condition was not improving but still recommended that they continue to monitor his condition rather than treat it because the current Hepatitis C treatments were not effective.  Id.  After further consultation, Dr. Graceffo agreed to treat Hatzfeld upon Hatzfeld's successful completion of a Resident Substance Abuse Treatment and Alcohol Substance Abuse Treatment ("RSAT/ASAT") program and a liver biopsy.  Id. at 5-6.  Hatzfeld agreed to undergo the liver biopsy but objected to the RSAT/ASAT program because it was "religious-based" and he was an atheist.  Id. at 6.

On September 30, 2002, a liver biopsy was performed on Hatzfeld at University Hospital in Syracuse by Dr. Holtzapple.  Id.  After receiving the results of the biopsy, Dr. Holtzapple concluded that Hatzfeld met the requirements for Hepatitis C therapy.  Id.  On December 26, 2002, Dr. Graceffo informed Hatzfeld of the results of the biopsy and requested that he sign a waiver to participate in the RSAT/ASAT program.  Id.  Hatzfeld again refused to participate in the program because of religious component.  Id.  In response, Dr. Graceffo stated that if Hatzfeld refused to sign the waiver, he would not

---

[4]Hepatitis C is "a chronic viral liver disease that can increase the risk of liver cancer and can lead to inflammation, scarring, and cirrhosis of the liver. Cirrhosis ultimately can lead to liver failure and death."  Pabon v. Wright, 459 F.3d 241, 246 (2d Cir. 2006).

receive medical treatment.  Id.

On December 27, 2002, Hatzfeld wrote letters to defendants Robinson, Dr. Wright, and Dr. Ahsan in order to address Dr. Graceffo's refusal to afford treatment.  Id. at 6-7. Each individual responded that it was DOCS policy to require participation in RSAT/ASAT prior to receiving treatment for Hepatitis C.  Id. at 7.  On January 15, 2003, Hatzfeld filed a grievance, but it was denied by defendant Rabideau on February 18, 2003.  Id. at 7-8; see also Compl., Ex. C.  On February 25, 2003, Hatzfeld appealed the decision to the Central Office Review Committee but never received a response.  Compl. at 9.  This action followed.

## II. Discussion

Hatzfeld asserts four causes of action, each against all defendants.  The first alleges that defendants discriminated against him due to his religious beliefs in violation of the Fourteenth Amendment Equal Protection Clause, the second that defendants forced him to participate in a religious program in order to receive proper medical treatment in violation of the First Amendment right to freedom of religion, the third that defendants denied him due process of law in violation of the Fourteenth Amendment, and the fourth that defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Compl. at 16.  Defendants seek dismissal of all but Hatzfeld's First and Eighth Amendment causes of action against Wright, McClendon, Ahsan, and Graceffo.  See Defs. Mem. of Law (Docket No. 68) at 1.

**A. Motion for Judgment on the Pleadings**

"The test for evaluating a [Fed. R. Civ. P.] 12(c) motion is the same as that applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998); Burke v. New York, 25 F. Supp. 2d 97, 99 (N.D.N.Y. 1998) (Munson, J.).  Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  Dismissal is only warranted if it appears beyond a reasonable doubt that the non-moving party can prove no set of facts in support of his or her claim which would be entitled to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In evaluating whether these requirements are met, complaints prepared pro se are held to less stringent standards than formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).

**B. Personal Involvement**

Defendants first contend that Hatzfeld has failed to establish the personal involvement of defendants Goord, Headley, Burge, Rabideau, and Robinson.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  The

doctrine of respondeat superior is not a substitute for personal involvement.  Polk County v. Dodson, 454 U.S. 312, 325 (1981).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  Supervisory personnel may be considered "personally involved," however, if they participated in the conspiracy, learned of the violation but failed to remedy the wrong, created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue, or were grossly negligent in managing subordinates who caused the violation.  Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted).

### 1. Goord and Headley

   Hatzfeld alleges that Goord, the Commissioner of DOCS, and Headley, the Deputy Commissioner, approved and allowed the current policy of forced participation in RSAT/ASAT prior to receiving treatment for Hepatitis C.  Compl. at 10-11.  Liberally construing Hatzfeld's complaint, he has alleged that Goord and Headley created an unconstitutional policy, or at least allowed such a policy to continue.  Williams, 781 F.2d at 324.  This suffices to state a claim against Goord and Headley as the two individuals within DOCS for creating and continuring department-wide policies such as this.  Defendants' motion as to Goord and Headley should be denied.

## 2. Burge and Rabideau

Hatzfeld contends that Burge, the Auburn Superintendent, violated his constitutional rights when he "allow[ed] his Designee [Rabideau] to deny Plaintiffs' Grievance and upheld the Policy of forced participation in RSAT/ASAT" before receiving treatment for Hepatitis C. Compl. at 12.  Hatzfeld also contends that Rabideau, the Deputy Superintendent, violated his constitutional rights when he denied his grievance regarding forced participation RSAT/ASAT.  Id. at 12-13.

It is well-established that when a "supervisory official like [a] . . . prison Superintendent receives letters or similar complaints from an inmate and does not personally respond, the supervisor is not personally involved and hence not liable."  Walker v. Pataro, No. Civ. 99-4607 (GBD/AJP), 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002); see also Ramos v. Artuz, No. Civ. 00-0149 (LTS/HBP), 2001 WL 840131, at *8 (S.D.N.Y. July 25, 2001) (holding that plaintiff failed to demonstrate the personal involvement of the superintendent where he forwarded plaintiff's complaints to the appropriate subordinates)). Thus, receipt of the grievance alone, without more, cannot suffice to allege personal involvement.  As to upholding the policy, a fair reading of the complaint demonstrates that the policy was DOCS-wide rather than Auburn-specific.  There can, therefore, be no claim that Burge either created the policy or allowed it to continue as there is no allegation that he had the power to create or to terminate the policy.  The motion as to burge should, therefore, be granted.

As to Rabideau, he was designated by Burge to review Hatzfeld's grievance concerning the required participation in RSAT/ASAT.  Compl. at 8.  In denying the grievance, Rabideau stated that Hatzfeld's claim was investigated by Dr. Ahsan, Auburn's

Medical Director, and that "[b]ased on her [Dr. Ahsan's] statement and a review of your medical folder, I find no merit to your allegations."  Compl., Ex. C.  Generally, "where a supervisory official receives and acts on a prisoner's grievance . . . , personal involvement will be found."  Pataro, 2002 WL 664040, at *13; see also Smith, 781 F.2d at 323 (personal involvement will be found when defendant learned of the violation but failed to remedy the wrong)).  Because Hatzfeld's grievance detailed his alleged constitutional violations, and because Rabideau responded to Hatzfeld's allegations, Rabideau's conduct could constitute personal involvement.

Therefore, defendants' motion on this ground should be granted as to Burge and denied as to Rabideau.

### 3. Robinson

Hatzfeld alleges that on December 27, 2002, he sent Robinson, the Auburn Nurse Administrator, a letter regarding the denial of his medical treatment due to his refusal to participate in RSAT/ASAT.  Compl. at 6-7, 14.  Hatzfeld alleges that in the letter he "clearly stated that the RSAT/ASAT Program, having a religious basis, was contrary to my religious beliefs and also contrary to clearly established Federal law."  Id. at 7.  Hatzfeld alleges that in response, Robinson stated that it was DOCS policy to participate in RSAT/ASAT prior to receiving Hepatitis C treatment.  Id.  As with Rabideau, a liberal construction of the complaint could suffice to demonstrate that Hatzfeld's December 27 letter detailing his alleged constitutional violation, along with Robinson's response reiterating the DOCS policy concerning participation in the RSAT/ASAT program, could constitute Robinson's personal involvement.  See McKenna v. Wright, No. Civ. 01-6571 (HB), 2004 WL 102752, at *5-6

8

(S.D.N.Y. Jan. 21, 2004); see also Rashid v. Hussain, No. Civ. 95-676, 1997 WL 642549, at

*3 (N.D.N.Y. Oct. 15, 1997)).

Therefore, defendants' motion as to Robinson should be denied.

### C. Equal Protection

Hatzfeld alleges in the first cause of action that the DOCS policy requiring inmates to

participate in RSAT/ASAT before receiving treatment specifically targeted Hepatitis C

patients in violation of his equal protection rights under the Fourteenth Amendment.  Comp.

at 9-10.  Defendants contend that this claim is without merit.  See Defs. Mem. of Law

(Docket No. 68) at 8-9.

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment

under the law.  Essential to that protection is the guarantee that similarly situated persons

be treated equally.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439

(1985).  "In order to establish an equal protection violation, the plaintiffs must show that they

were treated differently than other people in similar circumstances and must establish that

such unequal treatment was the result of intentional and purposeful discrimination."  Myers

v. Barrett, No. Civ. 95-1534 (RSP/GJD), 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997).

"A facially neutral policy violates equal protection if it is motivated by discriminatory animus

and its application results in a discriminatory effect."  Verley v. Goord, No. Civ. 02-1182

(PKC/DF), 2004 WL 526740, at *20 (S.D.N.Y. Jan 23, 2004) (citing Hayden v. County of

Nassau, 180 F.3d 42, 48 (2d Cir. 1999)).  However, "equal protection is not violated unless

the [policy] was enacted not in spite of its adverse effect on [a certain protected group] but

rather because it would have that effect."  Id. at *21 (citations and internal quotations

omitted).

Here, Hatzfeld alleges that unlike inmates with similar life-threatening diseases such as cancer or Acquired Immune Deficiency Syndrome (AIDS), DOCS required inmates with Hepatis C to participate in RSAT/ASAT before receiving medical treatment and, thus, "have effectively separated [Hepatitis C] inmates and targeted them as a specific group or class of people."  Compl. at 8-9.  Liberally construed, Hatzfeld's allegations regarding DOCS are sufficient to demonstrate that defendants instituted the policy in question with the intent to treat Hepatitis C-infected inmates differently and adversely from those with similar diseases. But see McKenna v. Wright, No. Civ. 01-6571 (WK), 2002 WL 338375, at *10-12 & nn. 10-12 (S.D.N.Y. Mar. 4, 2002) (holding that plaintiff failed to state an equal protection claim because "his Complaint, moving papers, and accompanying exhibits are devoid of any factual allegations that the [DOCS] Hepatitis C Guideline was implemented because of the alleged adverse effects it had on the medical treatment provided to inmates with Hepatitis C"); Verley, 2004 WL 526740, at *20-21 (dismissing inmate's equal protection claim because he failed to allege any discriminatory reason for requiring that the ASAT program be a prerequisite for Hepatitis C treatment).

Hatzfeld also appears to assert an equal protection claim based on his status as an atheist, claiming that atheist inmates were denied treatment because of their belief, which made them ineligible to obtain the RSAT/ASAT program required for Hepatitis C treatment. As with the claim based on Hepatitis C status, Hatzfeld has sufficiently alleged that defendants sought to affect his treatment adversely because he was an atheist.

Therefore, for both reasons, it is recommended that defendants' motion on this ground be denied.

**D. Eleventh Amendment**

Defendants move for judgment on the pleadings as to all claims against defendants in their official capacities.

The Eleventh Amendment prohibits suits against a state in federal court unless the state consents or waives its immunity. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984). A suit against a state official in his or her official capacity is a suit against the entity that employs the official. Mathie v. Fries, 121 F.3d 808, 818 (2d Cir. 1997). The state has not consented to suit or waived its immunity here. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Daisernia v. New York, 582 F. Supp. 792, 796 (S.D.N.Y. 1984). Thus, a suit that seeks monetary damages from an official in his or her official capacity is barred even though asserted against the individual. Kentucky v. Graham, 473 U.S. 159, 169 (1985).

Here, all defendants are named in both their individual and official capacities. See Compl. at 10-15. Hatzfeld seeks monetary damages against all defendants in their official capacities in the scope of their respective duties with DOCS. Thus, the Eleventh Amendment bar applies. However, a suit that seeks injunctive relief against officials acting in their official capacities is not barred by the Eleventh Amendment provided that the injunctive relief sought is to enjoin an official to conform his or her conduct to constitutional requirements. See Pennhurst, 465 U.S. at 100; see also Ex parte Young, 209 U.S. 123, 159-60 (1908). A court must inquire whether the complaint seeks prospective, injunctive relief to end an "ongoing violation of federal law." Aiken v. Nixon, 236 F. Supp. 2d 211, 227 (N.D.N.Y. 2002), aff'd, 80 Fed.Appx. 146 (2d Cir. 2003).

12

In his complaint, Hatzfeld sought a preliminary injunction prohibiting DOCS from conditioning his Hepatitis C treatment upon his participation in an RSAT/ASAT program. Compl. at 17. By an order dated September 23, 2005, Hatzfeld's request for the injunction was granted.  See Docket No. 57 at 10-11.  Thus, his request for injunctive relief is moot and defendants' motion on this ground should be granted as to all defendants in their official capacities.

### III.  Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that defendants' motion for partial judgment on the pleadings (Docket No. 68) be:

     1. **GRANTED** as to defendant Burge in all respects;

     2. **GRANTED** as to Hatzfeld's Fifth and Fourteenth Amendment due process claims;

     3. **GRANTED** as to Hatzfeld's claims against defendants in their official capacities; and

     3. **DENIED** in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATED: February 5, 2007
      Albany, New York_____         _____
                                             United States Magistrate Judge